940 F.2d 662
 7 Indiv.Empl.Rts.Cas. 1322
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lee SALYER, Plaintiff-Appellant,
Vernon Salyer, Jr., Danny Lee Collins, Leon D. Chapman, Plaintiffs,
v.
UNIVERSAL CONCRETE PRODUCTS, Defendant-Appellee.
 No. 90-3579.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1991.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HACKETT, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs appeal the district court's grant of summary judgment in favor of defendant in an action alleging failure by the defendant to give 60 days advance written notice of a plant closing as required under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. Secs. 2101-2109. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 2
 Prior to December 1989, Universal Concrete Products ("Universal") operated a Pipe Plant, producing concrete pipe, and a Bridge Division Plant, producing concrete bridge beams, at a location on West Whittier Street in Columbus, Ohio. These two facilities were housed in separate buildings located 50-60 feet apart. Following a corporate reorganization, Universal's operations at both facilities were eliminated effective December 29, 1989.
 
 
 3
 On March 6, 1990, plaintiffs filed a Complaint alleging that they represented and were members of a class of full-time employees of Universal at "the Columbus site, 500 West Whittier Street, Columbus, Ohio." They further alleged that Universal "maintained and operated a permanent facility at its Columbus site and employed one hundred (100) or more employees," and that Universal "closed its Columbus plant" on December 29, 1989 without giving notice as required under the WARN Act.[2]
 
 
 4
 On March 27, 1990, Universal filed a motion to dismiss, arguing that plaintiffs failed to state a claim under the WARN Act because, during the 90 day period prior to the closing of the two facilities (the maximum relevant time period under Sec. 2102(d) of the WARN Act) each facility employed less than 50 full-time employees.[3] In support of its motion to dismiss, Universal submitted an affidavit of its Divisional Controller, William Boughey, which stated that the Pipe Plant employed no more than 40 employees during the relevant period prior to the closing.
 
 
 5
 On April 5, 1990, plaintiffs filed a memorandum opposing the motion to dismiss in which they argued that the West Whittier Street location encompassed both the Pipe Plant and the Bridge Division Plant and constituted a single site of employment. Plaintiff's memorandum was supported by the affidavit of Leon Chapman, a laborer for Universal, which stated: "To the best of my belief, this Whittier Street plant employed more than one hundred (100) employees and that over fifty (50) employees became unemployed as a result of the December 29, 1989 shutdown."
 
 
 6
 On April 16, 1990, Universal filed a reply memorandum in which it argued that the Pipe Plant and the Bridge Division Plant were two separate sites of employment rather than a single site. The reply memorandum was supported by a second affidavit of William Boughey which stated that the Pipe Plant and the Bridge Division Plant were separate buildings with different products, equipment, employees, supervisors and managers, and that during the relevant period prior to the closing the Pipe Plant employed no more than 40 employees and the Bridge Division Plant employed no more than 25 employees.
 
 
 7
 The district court treated Universal's motion to dismiss as a motion for summary judgment and held that the WARN Act was inapplicable to the closing of the Pipe Plant because it was a separate single site of employment that had employed less than 50 employees. We affirm the decision of the district court.
 
 II.
 A.
 
 8
 Plaintiffs argue that the district court erred in converting Universal's motion to dismiss into one for summary judgment without providing notice to any party. The district court properly converted the motion to dismiss under Fed.R.Civ.P. 12(b), which provides in part:
 
 
 9
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 
 
 10
 The "reasonable opportunity" to respond language of Rule 12(b) does not require notice of an intent to proceed under Rule 56 unless the plaintiff is unfairly surprised by the defendant's submission of material, such as affidavits, pertinent to a motion for summary judgment. Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 393 (6th Cir.1975). A party cannot claim it is unfairly surprised when it makes no attempt to exclude an opponent's affidavits but instead responds with its own affidavits. Id.; Nichols v. United States, 796 F.2d 361, 364 (10th Cir.1986).
 
 
 11
 Plaintiffs in this case made no effort to exclude Universal's affidavit, and submitted an affidavit of their own in response to the motion to dismiss. Although plaintiffs did not respond to Universal's second affidavit submitted in support of its reply memorandum, the second affidavit merely embellished upon the facts established in the first affidavit. However, if plaintiffs believed the second affidavit raised additional issues, they could have moved under S.D.Ohio Local Rule 4.0.2 for leave to file an additional memorandum and affidavit "for good cause shown." By submitting their own affidavit, plaintiffs clearly had notice that the court would be considering matters outside the pleadings.
 
 B.
 
 12
 Plaintiffs next argue that the district court erred in granting summary judgment because Chapman's affidavit created a genuine issue of material fact as to the number of employees who were affected by the shutdown. However, Chapman's "belief" as to the number of persons employed and laid off at the West Whittier Street facilities did not create a genuine issue of material fact when contrasted with Boughey's affidavits. Furthermore, Chapman's affidavit failed to address the issue of whether the West Whittier Street location constituted a single site of employment. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Inc. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (footnote omitted).
 
 C.
 
 13
 Plaintiffs also argue that summary judgment was improper because Universal's position that the Pipe Plant and the Bridge Division Plant were separate sites of employment was incorrect as a matter of law. Plaintiffs rely upon the definition of a "single site of employment" found at 20 C.F.R. Sec. 639.3(i)(1):
 
 
 14
 (1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.
 
 
 15
 Universal relies upon the definition of a "single site of employment" found at 20 C.F.R. Sec. 639.3(i)(4):
 
 
 16
 (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.
 
 
 17
 Universal claims that the West Whittier facilities were "non-contiguous" because they were not in actual contact with each other. Plaintiffs respond that the facilities were "contiguous" because they were in immediate proximity to each other, thereby rendering Sec. 639.3(i)(4) inapplicable.
 
 
 18
 We need not decide whether the West Whittier facilities should be considered "contiguous". Even assuming contiguity, plaintiffs' claim would nevertheless fail under 20 C.F.R. Sec. 639.3(i)(5), which provides:
 
 
 19
 (5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.
 
 
 20
 Plaintiffs did not produce evidence to dispute Boughey's affidavit that the Pipe Plant and Bridge Division Plant were under separate management, produced different products and had separate workforces. Thus, the district court did not error in concluding that the Pipe Plant and Bridge Division Plant were separate single sites of employment, each employing less than 50 full-time employees, to which the WARN Act notice requirements did not apply.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Barbara S. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Section 2102(a) of the WARN Act provides in part:
 An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order--
 (1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and
 (2) to the State dislocated worker unit....
 29 U.S.C. Sec. 2102(a).
 
 
 [3]
 Section 2101(a)(2) of the WARN Act defines "plant closing" as meaning
 the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees.
 29 U.S.C. Sec. 2101(a)(2).