Eloy **MARQUES**, Ernesto Yzquierdo, Noel Yzquierdo, Plaintiffs,

v.

**TELLES RANCH, INC.**, Mayfair Farms, a partnership, Telles Farms, a partnership, and Frank R. Telles, d/b/a F.R. Telles, a sole proprietorship, Defendants.

No. C 93–20187 JW.

United States District Court, N.D. California.

Oct. 4, 1994.

Richard S. Kohn, California Rural Legal Assistance, San Francisco, CA, Michael Meuter, California Rural Legal Assistance, Salinas, CA, for plaintiffs.

# 1440

Barry E. Rosenberg, Klein, Wegis, DeNatale, Hall, Goldner & Muir, Bakersfield, CA, for defendants.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

WARE, District Judge.

### I. INTRODUCTION

In 1988 Congress enacted the Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. ("WARN"). WARN affords protection for workers by requiring employers to provide sixty days advance notice of plant closings and mass layoffs. This case requires the Court to consider whether lettuce harvesting companies which use seasonal employees are covered by WARN and, if so, whether the company's notice given at the end of the season that the company was terminating harvesting operations violated WARN. These issues are presented by Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross-motion for Summary Judgment, or Alternative Motion for Summary Adjudication of Issues. After considering the moving and opposition papers, arguments of counsel and all other matters presented, the Court finds in favor of Plaintiffs that WARN applies and finds in favor of Defendants that the notice given at the end of the season was timely. Therefore, the Court hereby GRANTS Partial Summary Judgment as set forth below.

### II. BACKGROUND

Plaintiffs are a class of agricultural laborers. Telles Ranch, Inc., Mayfair Farms, Telles Farms, and Frank R. Telles d/b/a/ F.R. Telles ("Defendants"), operate a lettuce harvesting business in Salinas, Coalinga, and Huron, California and Yuma and Tacna, Arizona. The lettuce harvesting operations are divided into two areas: the northern area, composed of Coalinga/Huron and Salinas; and the southern area, composed of Tacna and Yuma. All members of the class in this action worked harvesting lettuce for Defendants in the northern area. During the season, which lasted from approximately April through November, the employees were required to start work in Huron, move to Salinas, and finish the harvest in Huron. Twenty-eight class members also worked in the southern area during the off-season.

At the end of each harvest season, all lettuce harvesting employees who worked through the last day of the season would receive a standard form captioned "Employment, Change and Termination." This form had a box designated "layoff" which would be checked by the foreman on the notices distributed to lettuce harvesting employees. The date written on the notices was the date the workers were to call the office to find out when the season would begin so that they would know the date to report back. Over the years a regular pattern developed. Each year employees would work from the beginning of April until the end of November. December through March was the off-season. Many of the lettuce harvesting employees would file claims for unemployment insurance benefits during the off season.

At some point before the conclusion of the 1991 season in Huron, Defendants decided to terminate their own harvesting and to hire a farm labor contracting company to do their lettuce harvesting beginning with the 1992 season. All of the lettuce harvesting employees received their regular layoff notices on November 27, 1991 and they all were paid for the Thanksgiving holiday, November 28, 1991. However, unlike previous years, on November 29, 1991, William A. Jones, the general farm manager for Defendants, gave a notice to all lettuce harvesting employees that the company was terminating its lettuce harvesting operation.[1]

Plaintiffs claim that the termination notice given to them on the last day of the season, November 29, 1991, was in violation of the WARN Act, 29 U.S.C. § 2101 et seq. because they were not given sixty (60) days advance notice. Defendants contend that WARN does not apply, but if it does, they complied

---

1. The notice was distributed to all lettuce harvesting employees, to all foremen, to Pedro Mercado, Defendants' lettuce harvest manager, and to Felix Gonzalez, Defendants' lettuce harvest crew supervisor. The lettuce harvesting foremen and supervisors received severance pay checks in an amount equal to one week's pay for each year worked with the company.

with WARN because WARN does not apply to the off-season and employees were given more than sixty (60) days notice that there would be no work at the beginning of the season. None of Defendants' lettuce harvesting employees were recalled to work within six months of November 29, 1991.

On April 5, 1994, the Court stayed discovery in this case relevant to the issues of alter ego liability, single enterprise liability and the unforeseen business circumstances defense [2] and ordered the parties to file cross-motions for summary judgment on the following issues: (1) whether Defendants are an employer as defined under the WARN Act, (2) whether there was a plant closing or mass layoff as those terms are defined under WARN, and (3) whether seasonal employees are entitled to WARN notice. The Defendants' papers have further addressed the issue of whether the notice given to the lettuce harvesting employees was adequate under WARN. Below the Court addresses the above-referenced issues only as they apply to class-members who were "seasonal" employees of Defendants. Issues regarding Defendants' employees who were employed for the entire year and Defendants' employees who worked in the southern area during the off-season will not be decided in this Order.

### III. LEGAL STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552. The moving party's burden will be discharged upon a showing to the court that, after adequate time for discovery, there is an absence of evidence on an essential element of the non-moving party's case and that the non-moving party bears the burden of proof on that element. *Id.* at 322, 106 S.Ct. at 2552.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth "facts that might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The Court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 518–20, 111 S.Ct. 2419, 2434–35, 115 L.Ed.2d 447 (1991) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). It is the Court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv.*, 809 F.2d at 631. "Where the record taken as a whole could not lead a

---

**2.** As a result of the Order staying discovery, the parties have stipulated that the issue regarding the separateness of Telles Ranch, Inc. and Southwest Farms be deferred until after the Court's

stay lapses or is vacated or modified to allow discovery of the issues of alter ego liability, single enterprise liability and the unforeseen business circumstances defense.

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## IV. DISCUSSION

### A. Defendants are an Employer Under WARN

■ The Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101(a), defines an employer as

any business enterprise that employs-
(A) 100 or more employees, excluding part-time employees; or
(B) 100 or more employees who in the aggregate work at least 4000 hours per week (exclusive of hours of overtime)

■ Telles Ranch, Inc. is a California Corporation and is therefore a business enterprise under the statute. Every week between May 1, 1991 and November 30, 1991, except the weeks of November 10th and November 24th, Defendants employed 100 or more employees who in the aggregate worked at least 4000 hours per week exclusive of overtime. Accordingly, Defendants are an employer under WARN.[3]

### B. Defendants' Action was a 'Plant Closing' Under WARN

The WARN Act defines a "plant closing" as follows:

the term "plant closing" means the permanent or temporary shutdown of a single site of employment or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees.

29 U.S.C. § 2101(a)(2).

■ The first issue to be addressed is whether there was a "shutdown." "An em-ployment action that results in the effective cessation of production of the work performed by a unit, even if a few employees remain, is a shutdown." 20 C.F.R. § 639.3(b). From 1984 through 1991 Defendants harvested lettuce with its own crews in California and Arizona. On November 29, 1991, Defendants notified all lettuce harvesting employees that it was terminating its lettuce harvesting operations. For the 1992 season, Defendants hired a farm labor contracting company owned by its former harvest supervisor, Pedro Mercado, to do its lettuce harvesting. Defendants did not directly employ any lettuce harvesters in 1992. Under these facts, the Court finds there was a shutdown.

■ The next issue is whether Defendants operated a "single site of employment." Single site of employment is not a term defined in the WARN Act. However, the Department of Labor Regulations state that "[a] single site of employment can refer to either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(i). Title 20 C.F.R. § 639.3(i)(8) provides for a flexible interpretation of single site to ensure that the purposes of the WARN Act are fulfilled:

[t]he term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

In the case at bar, Defendants were operating lettuce harvesting businesses in several sites. The class members all worked in Defendants' "northern area," where employees moved from Huron, California to Salinas, California and then back to Huron.[4] The

---

**3.** Department of Labor Regulation 20 C.F.R. § 639.5(a)(2) indicates that the point in time at which the number of employees is to be measured is the date the first notice is required to be given. The Defendants use this regulation to argue that they are not an employer under WARN, since according to their calculations, they were not required to give notice, if at all, until January 29, 1992, a date on which they had less than 100 employees. The Court is not per-suaded by this argument since the Court doubts that the Department of Labor had seasonal employees in mind when writing this regulation.

**4.** In some years, the lettuce harvest would still be going on in Salinas while the season had already commenced in Huron. In some years, some lettuce crews would work harvesting lettuce in Huron while other crews would work harvesting lettuce in Salinas on the same day. In some

same lettuce harvesting equipment was used in both Salinas and Huron. Generally, the foremen and supervisors who supervised the crews in Salinas were the same foremen and supervisors who supervised the crews in Huron. Payroll for both the Salinas and Huron areas was handled from the Salinas office. And during some seasons, the company rented housing in the Huron area for use by the employees who did not want to drive back and forth daily from Salinas to Huron. Accordingly, the Court finds that the Huron and Salinas areas are sufficiently contiguous to be considered a single site of employment.

■ In order for a plant closing to occur, fifty or more employees must lose their jobs within a 30 day period. The WARN Act defines "employment loss" as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." 29 U.S.C. § 2101(a)(6). On November 29, 1991, the Defendants notified the lettuce harvesting employees that the company was terminating its lettuce harvesting operations and because of the company's decision, the employees did not start harvesting lettuce again in April. The employees' terminations were not "for cause," "voluntary departures" or caused by "retirement." Accordingly, the Court finds that the class members suffered an employment loss.

■ The Court rejects Defendants' argument that there was no plant closing since there was no physical plant. A plain reading of the statute makes clear that the term "plant" in the context of WARN is not synonymous with the word "building." It simply refers to the "single site of employment." Accordingly, the Court finds there was a plant closing pursuant to WARN.[5]

## C. Seasonal Employees Are Entitled to Notice Under WARN

■ Defendants claim that they were not required to give class members notice of the

plant closing under the WARN Act because the class members are "seasonal employees." Plaintiffs allege they were hired with the understanding that the employment was continuous through the year, despite the off-season.

There is no special treatment of seasonal workers under the WARN Act. Nor are there any industry-specific exemptions from coverage by the Act. However, Defendants claim that the case at bar falls under the exemption set out in 29 U.S.C. § 2103, which states:

> [t]his chapter shall not apply to a plant closing or mass layoff if—(1) the closing is of a temporary facility or the closing or layoff is the result of the completion of a particular project or undertaking and the affected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or undertaking.

According to 20 C.F.R. § 639.5(c)(2), in order for this exemption to apply,

> [e]mployees must clearly understand at the time of hire that their employment is temporary. When such understandings exist will be determined by reference to employment contracts, collective bargaining agreements, or employment practices of an industry or locality, but the burden of proof will lie with the employer to show that the temporary nature of the project or facility was clearly communicated should questions arise regarding the temporary employment understandings.

20 C.F.R. § 639.5(c)(3) provides that workers hired for harvesting would fall under this exemption if the workers understood at the time they were hired that their work was temporary.

> In defining temporary, one looks to 'the nature of the project. . . .' Generally, a project must be for a 'defined and limited' period and must have been begun with 'an announced and ascertainable duration and

---

years, harvesting crews would be sent to Huron to harvest lettuce in the Fall, then back to harvest lettuce in Salinas, then back again to harvest lettuce and complete the season in Huron.

**5.** Since the Court finds there was a "plant closing" it will not discuss whether there was a "mass layoff."

a terminal point.' ... What is important is that it be clear at the outset that upon the completion of some defined undertaking, the project will be complete.

*Washington v. Aircap Industries,* 831 F.Supp. 1292, 1296 (D.S.C.1993) (citations omitted).

The Court finds that Defendants have not met their burden of proving that the class members knew at the time they were hired that their employment was temporary. There is no evidence showing that Defendants made it clear to the class members that they were working on a temporary assignment. The evidence shows instead that class members clearly had an expectation of returning to work every April.

Defendants treated the class members as if they were "permanent seasonal" employees. When Defendants hired new lettuce harvesting employees, they were required to complete a Form I–9 before beginning work for the season. Once an employee had completed an initial Form I–9, Defendants did not require employees to complete a new Form I–9 at the beginning of each new season.

Employees were given seniority status after working for the company for a probationary period. Senior status was maintained by an employee from season to season as long as that employee complied with Defendants' rules regarding maintenance of seniority.

Upon hire, Defendants provided their employees with handbooks that enumerated their rights as employees.[6] These rights included: the right to seniority after working for a 30–day period, regardless of season or location; incentive pay in lieu of pension; a company paid medical plan for employees who worked at least 80 hours in the calendar month; the right to continue medical cover-

age during the off season; vacation pay in the amount of 2% of total gross earnings after the worker had worked 600 hours or more in the previous calendar year; after three years of maintained seniority, vacation benefits double for the third year worked and for future years so long as seniority is maintained; and paid holidays.

Furthermore, at the end of every season, employees were handed a layoff slip which always gave the date the employees were to call back for information regarding the start of the new season.

The Court finds that the actions of Defendants and the benefits provided by Defendants in the aggregate would lead an employee to believe that he or she was hired for more than just one season. Accordingly, the Court finds that the temporary exemption of 29 U.S.C. § 2103 does not apply to the case at bar.[7]

### D. Defendants' Notice Was Adequate Under WARN

The purpose of WARN is to provide workers, their families and communities, sixty days' calendar notice in advance of a "plant closing" or "mass lay-off" so that workers will have "transition time to adjust to their respective loss of employment." 20 C.F.R. § 639.1.

#### 1. Defendants' Notice was Timely

WARN mandates that

[a]n employer shall not order a plant closing or mass lay-off until the end of a sixty day period after the employer serves written notice of such order ... (1) ... to each affected employee, and (2) to the State dislocated worker unit ... and the chief elected official of the unit of local govern-

---

6. Defendants claim that only Southwest Farms provided a handbook to its employees and that when Southwest Farms went out of existence in January 1991, publishing and distribution of the handbook ceased. Forty-nine members of the class have signed acknowledgements that they received the handbook. Defendants dispute that the Southwest Farms handbook served as the policies of Southwest Farms or Telles Ranch and further contend that the class representatives did not understand the handbook to govern them. Nevertheless, the Court finds the contents of the

handbook persuasive in revealing the state of mind of the class members upon their hire.

7. The Court rejects Defendants' argument that the work was temporary since most of the class members rejected offers to work in the southern area during the off season. Moving from California to Arizona for several months may not have been a viable option for many of the class members in lieu of their personal situations.

ment within which such closing or layoff is to occur.

29 U.S.C. § 2102(a).

■ The Court must decide the threshold issue of when the "plant closing" occurred in order to determine if Defendants' notice was timely. Defendants claim that the "triggering event" for calculation of the notice requirement is April 1, 1992, when the new harvesting season would have begun if the plant closing had not occurred. Plaintiffs contend, however, that notice should have been given sixty days prior to the end of the 1991 season, or on September 30, 1991. Plaintiffs claim that this result is in keeping with the clear language of the Act.

As stated above, WARN defines a plant closing as:

the permanent or temporary shutdown of a single site of employment, ... if the shutdown *results in an employment loss* at the single site of employment during any 30–day period for 50 or more employees.

29 U.S.C. § 2101(a)(2) (emphasis added).

The Court finds that the plain meaning and purpose of the statute require a finding that the triggering event for notice in this case was the start of the 1992 season.

The statute speaks in terms of an "order" that "results" in an employment loss. In this instance, there could be no "result" from any "order" to close the harvesting operations until April, because during the off season, Plaintiffs did not work for Defendants and had no expectation of being employed by Defendants until April. The off season was a term and condition of Plaintiffs' employment under which each Plaintiff suffered an employment loss every year. Therefore, there was no "order" by Defendants that "resulted" in Plaintiffs experiencing an employment loss in November 1991.

This result is in keeping with the purpose of the statute to provide[ ] protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative

jobs, and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1(a).

In the case at bar, the employees were not affected until April 1992. They were given notice of the plant closing on November 29, 1991. This gave Plaintiffs 120–days to adjust to their prospective loss of employment, to seek alternative jobs, and/or to enter retraining. This is twice as much notice as the statute requires. Accordingly, the Court finds Defendants' notice of November 29, 1991 was timely.

### 2. Defendants' Form of Notice was Adequate

■ Notice under WARN must contain the following information:

[a] statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

An indication of whether or not bumping rights exist; and

The name and number of a company official to contact for further information.

20 C.F.R. § 639.7(d)

Department of Labor regulations provide that technical deficiencies or omissions in notice do not invalidate notice or result in WARN liability. *See Carpenters Dist. Council v. Dillard Dept. Stores,* 15 F.3d 1275, 1287 n. 19 (5th Cir.1994) ("[N]either the Act nor the regulations suggest that defective notice is automatically to be treated as though no notice has been provided at all.")

It is not the intent of the regulations, that errors in the information provided in the notice that ... are minor, inadvertent errors are to be the basis for finding a violation of WARN.

20 C.F.R. § 639.7(a)(4).

It is conceded by Defendants that its notice of November 29, 1991 did not meet all the technical requirements of 20 C.F.R.

§ 639.7(d). However, the Court agrees with Defendants' argument that these minor deviations did not cause harm to the Plaintiffs and therefore, liability should not be imposed.

Defendants' notice substantially complied with the department of labor requirements.[8] The notice provided that the company was ceasing operations, and since the 1991 season had already ended and Plaintiff's were in between seasons, the only interpretation of the notice is that it informed the Plaintiffs that they would not be rehired the next season in April 1992. Because Plaintiffs were non-union employees and clearly informed that there was a termination of harvesting operations, the issue of bumping rights was mooted by the fact that Defendants were ceasing all lettuce harvesting operations. And, although there was no name and number of a company official to contact for further information, Plaintiffs clearly knew and understood how to contact Defendants because Plaintiffs had done so every season to determine the date harvesting operations were to resume. Accordingly, the Court finds that the form of Defendants' notice was adequate under WARN.

### V. CONCLUSION

Based upon the foregoing, the Court hereby GRANTS partial summary judgment on the following issues: Defendants are an employer under WARN; The Defendants' cessation of operations were a 'plant closing' under WARN; the Plaintiffs are entitled to notice under WARN; and the Defendants' Notice was adequate under WARN.

IT IS HEREBY ORDERED that the stay of discovery imposed by the Court in its April 5, 1994 Order is lifted.

The Court hereby sets a Case Management Conference on Friday, November 4, 1994 at 10:30 a.m. The parties are ordered

to file a Joint Case Management Conference Statement, on or before October 21, 1994, indicating what issues, if any, remain in the case. The Statement should also apprise the Court as to the status of discovery and propose suggested pre-trial and trial dates.

IT IS SO ORDERED.

---

8. Defendants' notice was as follows: "NOTICE TO ALL LETTUCE HARVESTING CREWS OF TELLES RANCH, INC. We regret to inform you that due to circumstances out of our control, the company will discontinue all of its lettuce harvesting operations. The company appreciates all (your) the work done for it and it wishes you the best in the future. In the event that the company in the future would re-open its own lettuce harvesting crews, you will be given first consideration in our proceeding of employment. If you wish to continue your health insurance, you will need to pay your whole premium amount effective January 1, 1992. Only the employees presently employed will be eligible for the health insurance. Thank you and we wish you the best. TELLES RANCH, INC. November 29, 1991."