**Terry R. McCLAIN, et al., Plaintiffs,**

v.

**LAUREL STREET ART CLUB, INC., Defendant.**

**Civil Action No. 94–91.**

United States District Court,
E.D. Kentucky.

July 28, 1995.

Kenneth W. Scott, Martin Jahn, Florence, KY, for Plaintiff.

Jeffrey C. Mando, Adams, Brooking, Stepner, Woltermann and Dusing, Covington, KY, for Defendant.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

BERTELSMAN, Chief Judge.

This is an action under the Worker Adjustment Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN").

After pretrial proceedings, it was determined that the only issue of fact was whether the defendant's two facilities constituted a "single site of employment" as defined in the WARN Act. The parties waived a jury on this issue, and it was tried to the court on July 26, 1995.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court sets forth its findings of fact and conclusions of law as follows:

### Findings of Fact

1. The Laurel Street Art Club ("LSAC") was a Kentucky subchapter S corporation that manufactured, framed and shipped inexpensive artwork for retail sale in department and furniture stores.

2. Prior to February of 1994, the Laurel Street Art Club ("LSAC") maintained both its production operations and its framing and shipping operations in a single location in Hebron, Kentucky.

3. In February of 1994, LSAC moved its shipping and then its framing operations to a separate location in Florence, Kentucky, approximately 12 to 14 miles from the Hebron facility.

4. LSAC continued to manufacture the art at the Hebron facility and then shipped it by tractor trailer to the Florence facility to be framed, prepared for sale, and shipped to retail dealers.

5. In addition to the shipping and general framing operations, the Florence facility housed the production, framing and shipping operations for a new product line, the Parker Allen product line (which produced prints), for approximately one month in April of 1994.

6. The two operations, one in Hebron and one in Florence, shared a switchboard and a computer network. Local telephone directories listed only the Hebron address for the corporation, and United States mail was delivered only to the Hebron location, although items could be shipped via private parcel services directly to the Florence location.

7. LSAC management supervised both locations, but each location was directly supervised by separate plant managers who maintained offices only at the plant they managed.

8. Supplies for both facilities were ordered and distributed by the manager of the Florence plant. Although supplies were occasionally delivered directly to the Florence plant, the vast majority of supplies were delivered to and stored at the Hebron plant. Supplies maintained at the Hebron plant were then transferred to the Florence plant on an as needed basis.

9. Employees were primarily employed in a particular division, e.g., framing, shipping, silk screening. An employee's wage was determined by the division to which he was assigned. For example, production employees generally earned $8.00 per hour, while framers earned $5.00 per hour plus a bonus based on the number of units framed. Employees in the framing department typically earned up to $13.00 per hour, including their hourly bonus. For this reason, many employees sought employment in the framing division. When openings arose in the framing division, LSAC generally "promoted" a proven employee from another division to fill the opening in the framing division.

10. Sometime between February and May of 1994, LSAC management decided to terminate operations at the Hebron and Florence facilities and move the company to Mexico. LSAC employees employed at the Hebron and Florence facilities were not apprised of the company's decision until May 9, 1994.

11. The company ceased all production at both the Hebron and Florence facilities on May 13, 1994, although a small percentage of employees continued to work for a short time thereafter to effectively move the operation to Mexico.

12. At the time of the notification, approximately 40 employees were assigned to the Florence location, while almost 50 employees were assigned to the Hebron location. However, the defendant admits that it employed more than 100 employees during at least one pay period in the month of May, 1994.

13. The majority of employees worked only in their assigned work area, but employees from the framing division who had previously worked in production occasionally were asked to assist in the production division or to perform other tasks, such as loading and unloading trucks, on an as needed basis. For the four to six weeks immediately prior to May 13, 1994, approximately five to ten employees were asked to perform tasks out-

side of their department on an almost daily basis. These tasks frequently required them to clock in and begin work at the Florence facility and then report to the Hebron facility for the remainder of the day. Two employees were officially transferred from the Florence facility to the Hebron facility for a period of time during those final weeks of operation.

### Conclusion of Law

The applicable statute requires that employers of 100 or more employees provide a minimum of sixty days written notice before "the permanent or temporary shutdown of a single site of employment, ... if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees...." 29 U.S.C.A. §§ 2101(a)(2) and 2102(a) (1995 Supp.).

■ The decision in this case turns on whether the two facilities operated by LSAC constituted a "single site of employment." Although the statute does not define "single site of employment," the regulations promulgated by the Department of Labor provide in pertinent part:

(3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.

(4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.

20 C.F.R. § 639.3(i)(3) and (4) (1995).

Consistent with the regulations, courts generally conclude that two plants operated by the same employer in different locations constitute separate sites for purposes of the WARN Act unless the locations share employees and equipment. *See, e.g., Williams v. Phillips Petroleum Co.,* 23 F.3d 930 (5th Cir.1994); *United Mine Workers v. Jim Walter Resources, Inc.,* 6 F.3d 722 (11th Cir.1993); *Salyer v. Universal Concrete Products,* Case No. 90–3579, 1991 WL 135532 (6th Cir.1991); *Marques v. Telles Ranch, Inc.,* 867 F.Supp. 1438 (N.D.Cal.1994); *United Mine Workers of America, District 2 v. Florence Mining Co.,* 855 F.Supp. 1466 (W.D.Pa.1994); *Fuentes v. Houston Industries Inc.,* Case No. H–92–2728, 1994 WL 776692 (S.D.Tex.1994).

As the findings of fact demonstrate, some aspects of the LSAC operations tend to support a finding that the two facilities were "a single site of employment" while others do not. For example, both facilities shared the same upper management. The functions of both had for a time been accomplished under one roof. The switchboard for both facilities was at Hebron. The accounting functions and overall managerial functions for both facilities were also in the Hebron facility.

However, the Florence facility had its own work force of about 40 persons, although some six to eight persons worked sporadically at the Hebron facility when necessity required. This was especially true in the last six weeks of operation.

There was no exchange of equipment. However, most supplies for both locations were ordered by the Florence production manager but were shipped to and stored at the Hebron location. Finally, the chain of production in making LSAC art products began at the Hebron facility but was completed at the Florence facility.

Thus, this appears to be a borderline situation and the determinative issue, in the mind of this court, is whether geographically separate sites should be presumed to be separate sites of employment unless proved to be a single site, or vice-versa.

According to the recent opinion in *United Food & Commercial Workers Union v. Giant Markets, Inc.,* 878 F.Supp. 700 (M.D.Pa. 1995), which this court finds to be highly persuasive, the statute is to be narrowly

construed in favor of finding separate sites of employment where there is geographical separation. The discussion in that case is most pertinent:

> The House Conference Report for the WARN legislation explained that the phrase "single site of employment" was used "to clarify that geographically separate operations are *not* to be combined when determining whether the employment threshold for triggering the notice requirement is met." H.R.Conf.Rep. No. 100576, 100th Cong., 2d Sess. 1045 (1988), *reprinted* in 1988 U.S.C.C.A.N. 1547, 2078 (emphasis added). By way of illustration, the House Conference Report stated that "an automobile assembly plant on the east side of town and an assembly plant [operated by the same employer] on the west side of town *ordinarily* would be two separate 'sites of employment.' " *Id.*

*United Food and Commercial Workers Union*, 878 F.Supp. at 705–6.

The Pennsylvania court further notes:

> In Supplementary Information issued in connection with the promulgation of these regulations, the DOL explained that it intended that there be "an inextricable operational connection" to warrant treatment of geographically remote workplaces as a "single site of employment." 54 F.R. 16042, 16049 (1989). The DOL elaborated that "*[t]he general rule is that geographic separate facilities are separate sites,*" *id.* at 16150 (emphasis added), and that the exception was intended "to be a narrow one" to cover "those *rare* situations in which two separate buildings share staff, equipment and functions." *Id. See also, Williams,* 23 F.3d at 934) [sic] ("the regulations indicate that two plants across town will rarely be considered a single site for purposes of a mass layoff").

*United Food & Commercial Workers Union,* 878 F.Supp. at 706.

The Pennsylvania court also points out that common management is not of controlling significance. *United Food,* 878 F.Supp. at 708. "[T]he 'salient point' is indeed the frequency of employee and equipment interchange as well as the day-to-day manage-ment and operation of each [facility] in question." *Id.* at 708.

Therefore, the court finds that the legislative history and interpretive regulations indicate that where plants such as those in the case at bar are geographically separated, they are to be presumed to be separate sites of employment unless the workers can overcome a presumption to the contrary, by showing substantial interchange of employees and equipment.

While sympathizing with the plaintiffs' loss of their employment, the court must hold that they have not met this burden of proof. At most, the plaintiffs showed that there was some interchange of employees when the work situation required, involving not more than six to eight employees out of 40. Also, any interchange occurred mainly as the management of the defendant began to organize the move to Mexico. Further, the plaintiffs offered no evidence to contradict the testimony of the former Florence plant manager that the detailed day-to-day operations of the Florence facility were managed at Florence by the Florence plant manager.

Therefore, the court must conclude that, although there were some common aspects to these two sites, plaintiffs have not overcome the presumption of the statute and regulations that separate geographical locations will ordinarily not be considered a single site of employment.

This court's analysis is consistent with the few decisions interpreting this statute and regulations. *See, e.g., Williams v. Phillips Petroleum Co.,* 23 F.3d 930 (5th Cir.1994); *Carpenters District Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.,* 15 F.3d 1275 (5th Cir.1994); *United Mine Workers v. Jim Walter Resources, Inc.,* 6 F.3d 722 (11th Cir.1993); *Salyer v. Universal Concrete Products,* Case No. 90–3579, 1991 WL 135532 (6th Cir.1991); *Marques v. Telles Ranch, Inc.,* 867 F.Supp. 1438 (N.D.Cal. 1994); *United Mine Workers of America, District 2 v. Florence Mining Co.,* 855 F.Supp. 1466 (W.D.Pa.1994); *Fuentes v. Houston Industries Inc.,* Case No. H–92–2728, 1994 WL 776692 (S.D.Tex.1994).

**500**

Therefore, the complaint herein must be dismissed and the motion for class certification becomes moot and is hereby denied. A separate Judgment shall enter concurrently herewith.

**IT IS SO ORDERED.**