106 F.3d 401
 12 IER Cases 928
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry R. McCLAIN, Michael S. Clos, Plaintiffs-Appellants,
v.
LAUREL STREET ART CLUB, INC., Defendant-Appellee.
 No. 95-6147.
 United States Court of Appeals, Sixth Circuit.
 Jan. 22, 1997.
 
 Before: BOGGS, NORRIS, and JOHN R. GIBSON,* Circuit Judges.
 PER CURIAM.
 
 
 1
 Terry R. McClain and Michael Clos, on behalf of themselves and those similarly situated ("Plaintiffs,") sued Laurel Street Art Club, Inc. for violating the Worker Adjustment Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq., by closing its framed picture manufacturing plants without giving the workers notice as required under the statute.[1] The district court concluded that the two plants at issue in this case were not a "single site of employment" as defined in WARN and accompanying regulations, and the employees at the plants were therefore not covered by WARN. The court dismissed the action for failure to state a claim. We agree with the district court's conclusions, so we affirm.
 
 
 2
 * In the proceedings below, the court held a bench trial in which the "single site" question was the sole issue. The court issued findings of fact and conclusions of law. See McClain v. Laurel Street Art Club, Inc., 925 F.Supp. 496, 497 (E.D.Ky.1995). We have carefully reviewed the record on appeal, and accept the findings of fact as free of plain error. We have reviewed the district court's conclusions of law de novo. See Carpenters District Council of New Orleans & Vicinity v. Dillard Dept. Store, 15 F.3d 1275, 1289 (5th Cir.1994) ("Whether multiple work locations constitute a 'single site' under the WARN Act ... is a legal conclusion to be drawn from underlying historical facts" and is reviewed de novo). See also Williams v. Phillips Petroleum, 23 F.3d 930, 934 (5th Cir.1994). But see Frymire v. Ampex Corporation, 61 F.3d 757, 764 (10th Cir.1995) (reviewing for clear error because although "a 'single site of employment' determination is a mixed question of law and fact," it is "primarily a factual issue"). We approve of the district court's reasoning, adopt its legal conclusions as our own, and see no need to recast the opinion below in our own words.
 
 
 3
 However, in order to address an argument pressed by Plaintiffs on appeal, we add the following analysis. Plaintiffs particularly urge us to rely on the Fifth Circuit's decision in Dillard Dept. Store. In that case, a department store maintained facilities in more than one place. After the store merged into another corporation in 1989, many employees were laid off with little notice. The employees brought suit under WARN. The district court determined that the employees at one location, "the Bienville site," were not covered by WARN because they were not themselves numerous enough to meet the statutory threshold, and their workplace could not be grouped together with the main workplace as part of a "single site of employment." The Fifth Circuit reversed, analyzing the case as follows:
 
 
 4
 On appeal, the employees contend that the Bienville site and the Canal Street corporate division were a "single site of employment" because the job functions of the Bienville employees were closely integrated with the job functions of the Canal Street corporate division. A complete review of the underlying facts leads us to agree with the employees' contention. The evidence before the district court demonstrated that up until 1980 or 1981, the Bienville site employees were housed along with all other corporate employees at the Canal Street corporate division office. As the corporate division grew, it could no longer be comfortably housed in the Canal Street corporate division offices. In an effort to relieve overcrowding in those offices, certain divisions--including construction facilities management, energy management, and store planning--were relocated to the Bienville site. Once moved to the Bienville site, those employees continued to perform precisely the same company-wide functions they provided when housed in the Canal Street location. The Bienville site employees remained integrated with the Canal Street corporate division after the move. The Bienville site had no support staff, and the Bienville employees continued to rely upon the support staff at the corporate division office. In spite of the move to the Bienville site, the employees nevertheless considered themselves part of the corporate division, and Holmes continued to consider them corporate employees for payroll purposes. It is not irrelevant that the employees--precisely, like the Canal Street employees--were made redundant and lost their jobs directly because of the merger. These factors lead us to conclude that the Bienville site and the Canal Street corporate division were merely one site of employment that were separated because of space considerations. In our view, this situation may be classified as "an unusual organizational situation" under the DOL regulations. See 20 C.F.R. § 639.3(i)(4) (1988) (proposed regulations).
 
 
 5
 Hence, the court held that the two locations were a "single site of employment" under WARN. 15 F.3d at 1290.
 
 
 6
 Here, the Plaintiffs argue that the fact pattern is so close to that in Dillard Dep't Store that we should draw the same conclusion that the Fifth Circuit did. The most salient similarity between Dillard Dep't Store and the case at bar is the reason for which a formerly unified facility was divided in two. As in Dillard Dep't Store, the two groups of LSAC employees formerly were located under the same roof, but were relocated for space reasons. As one LSAC manager testified, conditions before the plant was divided in two were "very tight. We were busting at the seams. We needed more space."
 
 
 7
 As the Plaintiffs point out, the fact that the separation occurred at LSAC only months before the plant closings and layoffs, whereas the Dillard Dep't Store split-up took place eight years beforehand, would strengthen the argument that the two groups of LSAC workers should be treated as belonging to a single site of employment. But that would be true only if one accepted the Fifth Circuit's rationale, which we do not.
 
 
 8
 First, the language of the regulations as promulgated differed from the wording of the proposed regulations relied on in Dillard Dep't Store. Compare 53 Fed.Reg. 49076, 49083 (1988) (proposed regulations) with 54 Fed.Reg. 16042, 16064 (1989) (final rule). "Unusual organizational situation," the phrase in the proposed regulations, became "truly unusual organizational situation" in the adopted form.[2] We cannot say how the Fifth Circuit would have ruled had it applied the more restrictive language, but it is for us to ask whether it is "truly unusual" for space constraints to cause employees originally working in a unitary facility to be redeployed under separate roofs. We think that this is not a truly unusual organizational situation, but rather a truly common one. Growing businesses often find themselves "busting at the seams." If the lease on a business's original space has some time yet to run, or if it is otherwise not feasible to relocate to one large facility, management will very likely lease additional space and redeploy some groups of workers there. It will presumably be less common for one or both facilities to be closed down shortly thereafter, but many quotidian reasons could account for that, too--a cash-flow crisis associated with rapid business growth, a sudden downturn in orders, new opportunities, or logistical problems, to name only a few that come to mind. So we decline to apply Dillard Dep't Store, and hold that nothing in the facts as the district court found them is so unusual as to make the LSAC locations a single site of employment under 20 C.F.R. § 639.3(i)(8).
 
 II
 
 9
 Because the issue was touched on, though not adjudicated, in the proceedings below, we note the possible significance of the last sentence of § 639.3(i), the subsection that defines "single site of employment": "The application of this definition with the intent to evade the purpose of the Act is not acceptable."
 
 
 10
 The Plaintiffs alleged in their motion for summary judgment below, but not in their complaint, that LSAC deliberately split apart the Hebron facility in order to avoid the WARN requirement. There is no square denial by LSAC of this allegation in the record--only a denial by LSAC's president that he made a highly specific remark, months before the plant was split up, relating to the possible relocation of LSAC to Mexico, and the furnishing of an alternate explanation for the separation of the workers ("we were busting at the seams").
 
 
 11
 To our knowledge, no court has explored the meaning or logical force of the "not acceptable" language in § 639.3(i). Specifically, we have located no case in which it was found that the defendant split up a workforce with the intent of escaping the requirements of WARN. Thus, we find no guidance on the question of whether such a violation of the spirit, but not the letter, of WARN exposes the defendant to legal liability. That is a possible conclusion, but not a self-evident one. If this were the law, we would expect it to be more definitely written, as has been done elsewhere in federal labor law, 29 U.S.C. § 1392(c) ("If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."), and in the Internal Revenue Code, 26 U.S.C. § 9722 ("If a principal purpose of any transaction is to evade or avoid liability under this chapter, this chapter shall be applied (and such liability shall be imposed) without regard to such transaction."). The § 639.3(i) language may instead be merely hortatory, like some other parts of the regulations, see, e.g., § 639.1(c) ("The Department encourages employers to give notice in all circumstances.").
 
 
 12
 In any event, there has been no finding of fact either that LSAC engaged in a deliberate act of evasive mitosis, or that it did not. Nor do the plaintiffs appeal the absence of such a finding by the district court. So the issue of whether the regulatory language imposes an outright ban on dividing up a workforce in order to avoid WARN cannot be squarely addressed here. Nor can the question of whether two facilities that have been split apart in order to avoid WARN could be considered a single site of employment under the "truly unusual organizational situation" provision of § 639(i)(8).
 
 III
 
 13
 For the reasons stated by the district court, together with the analysis contained herein, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Hon. John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The central provision of WARN is that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order--(1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee...." 29 U.S.C. § 2101(a) (1995)
 WARN defines "plant closing" as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees...." § 2101(a)(2) (emphasis added).
 
 
 [2]
 "The term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply." 20 C.F.R. § 639.3(i)(8) (1995)