## UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL NUMBER 72, et al., Plaintiffs,

### v.

## GIANT MARKETS, INC., et al., Defendants.

### No. 3:93–CV–1540.

United States District Court, M.D. Pennsylvania.

Jan. 13, 1995.

---

Carey R. Butsavage, Butsavage & Associates, P.C., Washington, DC, for United Food Commercial Workers, Local No. 72, Barbara Repsher, John Endler, David A. Fry, Leonard Spinelli.

Robert Ufberg, Joseph S. Sileo, Scranton, PA, for Giant Markets, Inc.

Jacob I. Nogi, Nogi, Appleton, Weinberger & Wren, P.C., James A. Gibbons, Scranton, PA, for Town and Country Markets, Affiliated Food Distributors Inc.

## MEMORANDUM

VANASKIE, District Judge.

This is an action under the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101, *et seq.* This legislation requires, *inter alia,* that employers of more than 100 persons provide a minimum of sixty (60) days written notice before "the permanent or temporary shutdown of *a single site of employment,* or one or more facilities or operating units within *a single site of employment,* if the shutdown results in an employment loss at *the single site of employment* during any thirty-day period for fifty or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2) (emphasis added). "Employers who fail to provide the requisite notice must compensate employees suffering an employment loss for each day of the violation." *United Steel Workers of America v. Crown Cork & Seal*

*Co.*, 32 F.3d 53, 55 (3rd Cir.1994), *cert. granted*, 63 USLW 3400 (January 6, 1995).

Plaintiffs, consisting of the collective bargaining representative of the unionized employees of defendant Giant Markets, Inc. ("Giant"), and several former Giant employees, contend that the closure of five Giant retail outlets incident to the sale of four of those stores to defendant Affiliated Food Distributors, Inc. ("Affiliated Food"), and one of those stores to defendant Town & Country Markets ("Town & Country"), triggered WARN's plant closure notification requirements. Specifically, Plaintiffs contend that the five supermarkets in question constituted "facilities or operating units *within a single site of employment....*" 29 U.S.C. § 2101(a)(2) (emphasis added).[1]

Defendants responded to Plaintiffs' original Complaint and Amended Complaint with motions to dismiss supplemented by affidavits and other evidentiary material.[2] Defendants requested that, in accordance with F.R.C.P. 12(b), their motions be treated as seeking summary judgment and disposed of as provided in F.R.C.P. 56. Plaintiffs filed a cross-motion for partial summary judgment. The parties' separate motions address the dispositive issue of whether the five separate stores, spanning a distance of more than 50 miles, constitute "facilities or operating units within a single site of employment."

While Giant argued that resolution of this issue in its favor was appropriate on its summary judgment motion, and advanced arguments as to why the "facts" cited by Plaintiffs in support of their cross-motion were not "material," Giant also opposed Plaintiffs' motion on the ground that "there are genuine disputes over many of the 'material facts' [Plaintiffs] have alleged." (Dkt.Entry # 52 at p. 3.) And while Plaintiffs originally maintained that adjudication of the "single site of employment" issue was appropriate on their cross-motion for summary judgment, they subsequently moved for a "continuance" of the summary judgment motions so that they could pursue discovery. (Dkt.Entry # 63.)[3]

Essentially, the facts disputed by the parties, and Plaintiffs' proposed discovery, concern such matters as the autonomy of Giant's store managers, the rotation or transfer of Giant employees from one store to another, and the interchange and sharing of equipment and products. In addressing these matters, each party has presented facts applicable to Giant's operations in general. No party has presented facts pertaining to managerial autonomy, employee rotation, and equipment sharing specific to the five stores in question. Because it appears that it is the degree of interrelationship among the multiple workplaces in question that is germane to the "single site of employment" issue and these facts are neither free from dispute nor fully developed, the pending motions will be denied, a discovery schedule established, and this matter listed for trial.[4]

## I.

Giant had been the owner of a substantial chain of grocery stores. At its zenith, Giant had twenty-one stores in operation. (Giant Statement of Material Facts (Dkt.Entry

---

1. The original Complaint, filed in this matter on October 7, 1993, named as Plaintiffs only the United Food & Commercial Workers Union, Local 72 ("Local 72"). The Amended Complaint, filed on December 3, 1993, added as plaintiffs four former Giant employees, alleged to be 'affected employees' within the meaning of WARN. The Amended Complaint refers to these four persons as "Representative Individual Plaintiffs." Class certification, however, has not been sought.

2. In light of the filing of Plaintiffs' Amended Complaint, the Defendants' motions to dismiss the original Complaint (Dkt.Entry # 4 and # 5) will be dismissed as moot.

3. Plaintiffs' motion for continuance was filed on October 13, 1994, after oral argument on the cross-motions had been presented.

4. In addition to the "single site of employment" issue, the Defendants, in requesting summary judgment, also asserted a statute of limitations defense and challenged the Union's standing. The statute of limitations argument was premised upon the contention that WARN claims were governed by the National Labor Relations Act six month limitations period. 29 U.S.C. § 160(b) This contention was rejected by our Court of Appeals in *United SteelWorkers of America, supra*. In that case, the court ruled that the most closely analogous state statue of limitations is applicable to WARN actions. Since this case was brought within the limitations period set forth in any of the applicable Pennsylvania state statutes of limitations, it is not time-barred. 32 F.3d at 61. On the standing issue, I agree with Judge Bloch's analysis in *UMWA, District 2 v. Florence Mining Co.*, 855 F.Supp. 1466, 1472–73 (W.D.Pa.1994), recognizing a Union's standing to bring an action

# 21) at ¶ 1.)[5] By 1993, Giant's business had declined to six groceries stores.

On or about March 24, 1993, Giant sold its store located at 30 Hanover Street, Wilkes–Barre, Pennsylvania (the "Hanover Street Store") to Defendant Town & Country. (Plaintiffs' Statement of Material Facts (Dkt.Entry # 34) at ¶ 11.) Giant closed the Hanover Street Store on or about April 17, 1993. (*Id.* at ¶ 14.) There were fifteen persons employed at the Hanover Street Store at the time of its closure. (Giant Statement of Material Facts (¶ 21) at ¶ 7B.)

Pursuant to an agreement dated May 11, 1993, Giant sold four of its remaining five stores to Defendant Affiliated Food. (Plaintiffs' Statement of Material Facts (Dkt.Entry # 34) at ¶ 13.) The stores sold to Affiliated Food and the number of persons employed at each store were as follows:

| | |
|---|---|
| Honesdale Store<br>Route 6 Mall, Honesdale, PA | 33 employees |
| Keyser Oak Store<br>Keyser Oak Plaza, Scranton, PA | 22 employees |
| Kingston Store<br>750 Wyoming Ave., Kingston, PA | 27 employees |
| Dunmore Store<br>320 S. Blakely Street, Dunmore, PA | 18 employees |

(Giant Statement of Material Facts (Dkt.Entry # 21) at ¶¶ 2 and 7B.) The Dunmore, Honesdale, Kingston, and Keyser Oak facilities were closed on or about May 12, 1993. (Plaintiffs' Statement of Material Facts (Dkt.Entry # 34) at ¶ 15.)[6]

The distances between the stores in question varied from 2.8 miles (Dunmore Store to Keyser Oak Store) to 52.1 miles (Honesdale Store to Hanover Street Store.) (Giant Statement of Material Facts (Dkt.Entry # 21) at ¶ 3.)[7] If only the most geographic proximate stores were at issue, the fifty affected employee threshold could not be satisfied. For example, although the Keyser Oak and Dunmore Stores are 2.8 miles apart, collectively they employed only forty persons. Similarly, while the Kingston and Hanover Street Stores were four miles apart, collectively they only employed 42 persons. In order to attain the employee threshold, it is necessary to aggregate stores separated by a distance of at least 20 miles.

Each of the stores in question was included under a single collective bargaining agreement, with Giant's unionized employees being represented by Local 72. (Plaintiffs' State-

---

for damages under WARN. Accordingly, Defendants' standing challenge will also be rejected.

**5.** In accordance with Local Rule 7.4, Giant and the Plaintiffs have each submitted "Statements of Material Facts" and have responded to the other party's statement. Unless otherwise indicated, the factual account here is based upon those facts that are undisputed.

**6.** Giant's remaining store is located on Meadow Avenue in Scranton, PA. In addition, Giant owns and operates a warehouse facility. It is unclear how many persons are employed at Giant's Meadow Avenue Store and warehouse.

**7.** The following grid sets forth the distances between the stores in question.

| STORES | Honesdale | Keyser Oak | Kingston | Hanover Street | Dunmore |
|---|---|---|---|---|---|
| Honesdale<br>Route 6<br>Honesdale, PA | — | 35 | 50.7 | 52.1 | 32.1 |
| Keyser Oak<br>Keyser Oak Plaza<br>Scranton, PA | 35 | — | 25.7 | 27.2 | 2.8 |
| Kingston<br>750 Wyoming Ave.<br>Kingston, PA | 50.7 | 25.7 | — | 4 | 20 |
| Hanover St.<br>30 Hanover St.<br>Wilkes–Barre, PA | 52.1 | 27.2 | 4 | — | 27.3 |
| Dunmore<br>320 S. Blakely<br>Dunmore | 32.1 | 2.8 | 20 | 27.3 | — |

ment of Material Facts (Dkt.Entry # 34) at ¶ 18.) Since 1965, the terms and conditions of employment for Giant's unionized employees have been negotiated by Giant's centralized management group, and have not been negotiated by individual store managers. (*Id.* at ¶ 20.)[8]

It is undisputed that Giant is an "employer" as that term is defined in WARN, 29 U.S.C. § 2101(a)(1). (*Id.* at ¶ 3.) It is also undisputed that Giant did not provide sixty-days advance written notice of the closures of the five stores in question. If these five stores are not "facilities or operating units within a single site of employment," then it appears that the requirements of WARN are not implicated.[9]

## II.

"Whether multiple locations constitute a 'single site' under ... WARN ... is a legal conclusion to be drawn from the underlying historical facts." *Carpenters District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.,* 15 F.3d 1275, 1289 (5th Cir.), *petition for cert. filed,* 62 USLW 3809 (May 20, 1994). The threshold task is to determine what "underlying historical facts" are relevant to a determination of whether geographically separated workplaces can be considered a "single site of employment." The starting point for ascertainment of what underlying facts are material is the language used by Congress in WARN. *See United SteelWorkers of America v. North Star Steel Co.,* 5 F.3d 39, 41 (3d Cir.1993),

cert. denied, —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994).

The statute does not define the term "single site of employment." *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 934 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 582, 130 L.Ed.2d 497 (1994). If the phrase was applied literally, each of the stores in question would constitute separate sites of employment. Each of the cases that has addressed the issue, however, has recognized that geographically-separate workplaces may constitute a single site of employment, and have resorted to legislative history and interpretative regulations to determine whether the multiple workplaces at issue constituted a single site of employment. *See e.g., Williams,* 23 F.3d at 934; *Carpenters Council,* 15 F.3d at 1289; *International Union, UMW v. Jim Walter Resources, Inc.,* 6 F.3d 722, 724–25 (11th Cir.1993); *Florence Mining Co.,* 855 F.Supp. at 1474–75. These aids to statutory interpretation will also be considered here.

The House Conference Report for the WARN legislation explained that the phrase "single site of employment" was used "to clarify that geographically separate operations are *not* to be combined when determining whether the employment threshold for triggering the notice requirement is met." H.R.Conf.Rep. No. 100576, 100th Cong., 2d Sess. 1045 (1988), *reprinted* in 1988 U.S.C.C.A.N. 1547, 2078 (emphasis added). By way of illustration, the House Conference Report stated that "an automobile assembly plant on the east side of town and an assembly plant [operated by the same employer] on

**8.** Presumably, Giant's unionized employees at the Meadow Avenue Store were also members of Local 72 and were subject to the same collective bargaining agreement governing the terms and conditions of employment for the Giant unionized employees at the five stores in question. It is unclear whether employees at the Giant warehouse are represented by Local 72 or are part of the same bargaining unit.

**9.** In addition to requiring advance written notice of a plant closing affecting more than 50 employees, WARN requires covered employers to provide "affected employees" notice of a mass layoff. *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 934 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 582, 130 L.Ed.2d 497 (1994). A "mass layoff" is defined as follows:

A reduction in force which—
(A) is *not* the result of a *plant closing;* and
(B) results in an employment loss at the single site of employment during any thirty day period for—
(i)(I) at least 33% of the employees (excluding any part-time employees); and
(II) at least 50 employees (excluding any part-time employees); or
(ii) at least 500 employees (excluding any part-time employees).
29 U.S.C. § 2101(a)(3). Plaintiffs in this case contend that a "plant closing" occurred and do not rely upon the notice requirements implicated when there is a "mass layoff."

the west side of town *ordinarily* would be two separate 'sites of employment.' " *Id.*

The House Conference Report thus suggests that the phrase "single site of employment" is to be given a narrow interpretation. The use of the qualifying adverb "ordinarily" does suggest, however, that there may be circumstances when geographically separate workplaces may be aggregated to constitute a "single site of employment." The legislative history, unfortunately, does not elaborate as to what circumstances may warrant treating geographically remote workplaces as a "single site of employment."

Interpretative regulations issued by the Department of Labor ("DOL") do offer some guidance. Those regulations, in pertinent part, provide:

(i) *Single site of employment.* (1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.

\* \* \* \* \* \*

(3) *Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose and share the same staff and equipment.* An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.

(4) *Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.*

(5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.

(6) *For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.*

\* \* \* \* \* \*

(8) The term "single site of employment" may also apply to *truly unusual organizational situations* where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable. 20 C.F.R. § 639.3(i) (1993) [emphasis added].

■ In sum, the regulations provide that geographically-separate workplaces may be aggregated if the following three conditions are satisfied:

(1) The separate buildings "are in reasonable geographic proximity";

(2) the separate buildings are used for the same purposes; and

(3) the separate buildings share the same staff and equipment.

In Supplementary Information issued in connection with the promulgation of these regulations, the DOL explained that it intended that there be "an inextricable operational connection" to warrant treatment of geographically remote workplaces as a "single site of employment." 54 F.R. 16042, 16049 (1989). The DOL elaborated that "[t]he general rule is that geographic separate facilities are separate sites," *id.* at 16150 (emphasis added), and that the exception was intended "to be a narrow one" to cover "those *rare* situations in which two separate buildings share staff, equipment and functions." *Id. See also, Williams,* 23 F.3d at 934) ("the regulations indicate that two plants across town will rarely be considered a single site for purposes of a mass layoff").

■ If work locations across town do not constitute a "single site of employment," it

seems anomalous that grocery stores separated by more than twenty miles could be aggregated to trigger WARN's notification requirements. Nonetheless, the interpretative regulations recognize that separate locations may be aggregated if "they are in *reasonable* geographic proximity." 20 C.F.R. 639.3(i)(3) (1994) (emphasis added). What is "reasonable geographic proximity" would appear to be dependent upon the facts and circumstances of each case.

In this case, the Plaintiffs contend that the interchange of employees among Giant's stores whenever it was appropriate under the collective bargaining agreement governing *all Giant* facilities compels a determination that the stores in question constitute "facilities or operating units within a 'single site of employment.'" They further argue that "the salient point is not how frequently equipment [or personnel] was interchanged but that such *interchange occurred whenever it was necessary.*" (Brief in Support of Plaintiffs' Cross–Motion for Partial Summary Judgment (Dkt.Entry # 36) at pp. 43–44 n. 43.) In support of this argument, Plaintiffs rely heavily upon the fact that the collective bargaining agreement applicable to *all* Giant facilities (including the five stores in question) purportedly governed such matters as temporary transfers, bumping rights, permanent transfers, and promotional transfers of Giant's unionized employees. Plaintiffs argue that the fact that all Giant facilities constitute a single collective bargaining unit "is substantial, if not conclusive evidence that the facilities at issue constitute a single site of employment." (*Id.* at p. 26.)

That the stores in question were governed by the same collective bargaining agreement does not appear to be irrelevant. *See Jim Walter Resources, Inc.*, 6 F.3d at 726; *Florence Mining Co.*, 855 F.Supp. at 1480. There are at least two reasons, however, why the existence of a single collective bargaining

agreement should not be ascribed the importance that Plaintiffs accord it.

■ First, the DOL Supplementary Information specifically rejected cross-plant bumping and employee transfers as compelling a determination of a "single site of employment."[10] 54 F.R. 16042, 16050 (1989). Thus, the mere fact that the Giant collective bargaining agreement may have governed such matters as temporary transfers, bumping rights, permanent transfers, and promotional transfers does not remove this case from the general rule that geographically remote facilities are to be treated as separate sites of employment. *Cf., Florence Mining*, 855 F.Supp. at 1480 (employees' rights to transfer to a separate mine operated by the same employer did not warrant treating the separate mines as a single site of employment).

■ The second reason for declining to accord substantial weight to the existence of a single collective bargaining agreement is that, contrary to Plaintiffs' assertions, there is no basis for equating a "single bargaining unit" under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*, and a "single site of employment" under WARN. Had congress intended to equate a "bargaining unit" with a "site of employment" it could easily have done so. That neither Congress nor DOL opted to define a "single site of employment" in terms of "bargaining units" under the NLRA militates against a determination that the existence of a single bargaining unit is, standing alone, significant. Moreover, our Court of Appeals, in holding that the six-month limitations period under the NLRA is *not* applicable to actions under WARN, has recognized substantial differences between the two pieces of labor legislation. *See United Steelworkers of America v. Crown Cork & Seal Co.*, 32 F.3d at 58–59. WARN establishes substantive rights; the NLRA is concerned with the process of col-

---

**10.** In rejecting the suggestion that the regulations should be interpreted to include as a "single site of employment" geographically remote workplaces for which employees enjoyed cross-plant bumping rights, the DOL explained:

These employers have cross-plant bumping and worker transfer among a number of geographically separate facilities over a large area,

in one case a major metropolitan area, in another a several hundred square mile area. Given the concern expressed in the Conference Report ... that geographically separate facilities be treated separately, neither of these situations is an appropriate exception to the rule which Congress intended to apply, that individual plants should be treated individually. *Id.*

lective bargaining. WARN protects both non-union and union workers; the NLRA does not. *Id.* at 58.[11] "Any effects WARN has on the collective bargaining process are tangential at best." *Id.* Thus neither logic nor the policies underlying WARN and the NLRA lead to the conclusion that NLRA concepts should be applied to determine WARN liability.

■ In arguing that the "salient point" is not the frequency of employee and equipment interchanges, Plaintiffs also regard as significant Giant's purported centralized management and control of the stores in question. Once again, while this fact may be relevant, it does not have the controlling significance that Plaintiffs ascribe to it. DOL's interpretative regulations acknowledge that "[a]n employer may have one or more sites of employment under common ownership *or control.*" 20 C.F.R. § 639.3(a)(4) (1994) (emphasis added). As explained in *International Union, UMW v. Jim Walter Resources, Inc.,* 6 F.3d 722, 736 (11th Cir.1993), the "essence of WARN [is] the day-to-day management and personnel," not "overall corporate management." Thus, contrary to Plaintiffs' assertions, the "salient point" is indeed the frequency of employee and equipment interchange as well as the day-to-day management and operation of each store in question.

■ The only evidence presented by Plaintiffs on the degree of employee transfers and sharing of equipment is found in the Affidavit of Thomas Polacheck, the former manager of the Kingston Store. (Dkt.Entry # 37, Exhibit 1.) This evidence is anecdotal in nature and concerns transfers of employees and equipment in general; it is not specific to the stores in question. The Polacheck Affidavit is clearly insufficient to support a conclusion that the sites in question shared the same staff, equipment, and operational purposes.[12]

■ Giant, in support of its summary judgment motion, presented an Affidavit of its President, Joseph Hodin, which asserts that, during the two years preceding the sale of the stores in question, the percentage of hours worked by Giant employees in stores other than their "home stores," in relation to total hours worked by all Giant employees, was less than 2%. (Dkt.Entry # 25, Exhibit "A" at ¶ 13.) This "statistical analysis" tends to support a conclusion that the stores did not "share" employees. As Plaintiffs observed, however, Giant did not provide substantiation for its "statistical analysis."

11. As our Court of Appeals also explained:

The [notification] rights bestowed by the NLRA focus solely on the need for a meaningful collective bargaining process. WARN provides an across-the-board substantive right. The implementing regulations of the statute highlight this crucial distinction by providing that '[c]ollective bargaining agreements may be used to clarify or [to] amplify the terms and conditions of WARN, but *may not reduce WARN rights.*' 20 C.F.R. § 639.1(g) (emphasis added). In other words, the NLRA requires notice to protect the meaningfulness of the collective-bargaining process; WARN's purpose is to substantively protect the employees and their communities. 32 F.3d at 58–57.

Thus, the parties could have negotiated for inclusion in the collective bargaining agreement of a provision equating the bargaining unit with a "single site of employment." No such amplification of the terms and conditions of WARN, however, was here.

12. Plaintiffs also submitted the Affidavit of Frank Colella, Business Agent of Local 72. The Colella Affidavit addresses the nature of the collective bargaining relationship between Giant and Local 72; the resolution of management/employee disputes, and Giant's centralized management. (Dkt.Entry # 37, Exhibit 3.) For example, Colella asserts that "[f]rom 1965 to the present, Giant Markets has always operated, in all meaningful respects concerning its employees and operations, as a single, integrated enterprise of which each facility is a component rather than as separate and independent stores." (*Id.*, ¶ 10.) This assertion appears to be similar to the "attempt to blur the distinction between a single site and a single employer" rejected in *Jim Walter Resources,* 6 F.3d at 725. Centralized control does not render geographically-separate workplaces a "single site of employment." *Id.* at 726. The pertinent inquiry is the extent to which staff and equipment were actually shared. On this issue, Colella asserts that "[f]rom 1965 until May, 1993, Giant regularly rotated, transferred and/or interchanged employees, department heads, store managers, assistant store managers and other personnel between and among various stores or facilities." (Dkt.Entry # 37, Exhibit 3 at ¶ 6.) This conclusory assertion is an inadequate premise for a summary judgment ruling. Moreover, Giant disputes the contention that employees were "regularly" rotated, transferred and/or interchanged among stores.

(Plaintiffs' Brief in Support of their Cross–Motion for Partial Summary Judgment (Dkt.Entry # 36) at p. 39.) Moreover, it appears that Giant's analysis does not take into account permanent transfers, promotional transfers, "bumping" transfers, and employee rotations. (*Id.* at p. 40.)[13] Accordingly, the "statistical analysis" presented by Giant is an inadequate basis for a summary judgment ruling.

■■■ Giant argues that "[i]t is absurd to imagine that [WARN] compels a finding that five different and distinct grocery stores, separated by as much as fifty miles, each having a separate management structure, each employing its own workforce, each ordering its own groceries, and each housing its own equipment would be considered one 'single site of employment.' " This assertion is undoubtedly correct. There are, however, genuine disputes concerning management structure, workforce, individual store autonomy, and sharing of equipment. Thus, the factual premise for Giant's assertion has not yet been established.

Significantly, neither Giant nor the Plaintiffs have submitted any evidence concerning the extent to which there was employee and equipment interchanges among the stores in question. Assuming, *arguendo*, that there was extensive employee and equipment sharing between geographically-proximate stores, such as the Dunmore and Keyser Oak Stores, it does not necessarily follow that geographically remote stores, such as the Honesdale Store, should be considered part of a "single site of employment." In other words, if there was little or no interchange of employees and equipment between Honesdale and other Giant Stores, the nearest of which was located more than 30 miles from the Honesdale Store, then the Honesdale Store may fall within the general rule governing geographically-separate workplaces and constitute a "single site of employment."[14] Since there is no evidentiary record on this important fact, resolution of the "single site of employment" issue on summary judgment motions is inappropriate.

### III.

In conclusion, the "underlying historical facts" germane to the question of law presented in this case concern matters such as the movement of employees and equipment among the stores in question. Since these underlying facts are contested, a "continuance" of the summary judgment motions, as requested by Plaintiffs, is inappropriate. Instead, the motion for a continuance will be dismissed and the cross-motions for summary judgment will be denied. An appropriate Order is attached.[15]

13. In this regard, one significant area in dispute concerns rotation of meat cutters, deli workers, and produce employees.

14. The same analysis would apply as well to the Kingston and Hanover Street Stores *vis a vis* their relationship to the Keyser Oak, Dunmore, and Honesdale Stores.

15. The dispositive motion filed on behalf of both Town & Country and Affiliated Food (Dkt.Entry # 22) primarily advances the same arguments presented on behalf of Giant. Plaintiffs seek to impose liability on Town & Country and Affiliated Food under 29 U.S.C. § 2101(b)(1), which, in pertinent part, provides:

> In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff ... up to and including the effective date of the sale. After the effective date of the sale of part or all of an employer's business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff....

It seems anomalous that Town & Country, which purchased the Hanover Street Store, could be exposed to liability under WARN even though no more than 15 persons were potentially affected by its purchase. It is unclear why a purchaser of a single store, the sale of which affects less than the threshold number of employees, should be held liable under WARN because another purchaser or purchasers acquire other stores, with the resulting store closings affecting more than the threshold amount of employees. This anomaly underscores the soundness of the general rule that geographically separate facilities are to be considered separate sites of employment under WARN. Under the circumstances presented here, however, it is appropriate to defer consideration of Town & Country's

potential liability until after the "single site of employment" issue has been decided.