No. 95-2605

Leonard Rifkin, James F.          *
Hutson, on their own behalf       *
and on behalf of all others       *
similarly situated; Gerald        *
Blair,                            *
                                  *
    Appellants,                   *
                                  *  Appeal from the United States
    v.                            *  District Court for the
                                  *  Eastern District of Missouri.
McDonnell Douglas Corporation,    *
a Corporation,                    *
                                  *
    Appellee.                     *

                Submitted: January 8, 1996

                  Filed: March 6, 1996

Before BEAM, MORRIS SHEPPARD ARNOLD, Circuit Judges, and ALSOP,[*] District
    Judge.

ALSOP, District Judge.

    Appellants Leonard Rifkin, et al., bring this action claiming
McDonnell Douglas Corporation violated their rights under the
Worker Adjustment and Retraining Notification ("WARN") Act by
failing to provide timely notice to workers who suffered an
employment loss.  29 U.S.C. §§ 2101-09 (1992).  They appeal the
District Court's[1] ruling that there was no "mass layoff" as defined

---

    [*]The HONORABLE DONALD D. ALSOP, United States District Judge
    for the District of Minnesota, sitting by designation.

    [1]The Honorable Lawrence O. Davis, United States Magistrate
Judge fo the Eastern District of Missouri, to whom the case was
referred for final disposition by consent of the parties pursuant
to 28 U.S.C. § 636(c)(1988).

in the WARN Act because the requisite 500 employees did not suffer an employment loss and, because there was no "mass layoff", the WARN Act does not apply.  We affirm.

I.

In early 1992, Leonard Rifkin and James F. Hutson were employees of McDonnell Douglas Corporation in the metropolitan St. Louis area.  Between October 16, 1992 and January 14, 1993, 609 employees, including appellants, were laid off by McDonnell Douglas.  None of these employees received the 60 days' written notice required by the WARN Act.

These 609 employees worked at different locations in the St. Louis metropolitan area.  Five hundred sixty-two (562) employees worked at the St. Louis County location whereas 47 employees worked at the St. Charles County location.[2]  These two locations are 11 ½ miles apart.  Fifty-two (52) employees were "part-time" employees as defined by the WARN Act (50 at the St. Louis County location and 2 at the St. Charles County location).  Both parties agree the part-time employees do not count towards the requisite 500 employees.  Thirty-five (35) employees who had been laid off during this period were rehired within six months (32 at St. Louis and 3 at St. Charles).  Thirty-one (31) employees elected early retirement in lieu of being laid off (all at St. Louis).

---

[2]There are actually two locations in St. Charles County and numerous locations in St. Louis  County.  The parties do not dispute whether the locations within each separate county may be grouped together.  The only dispute is whether those locations in St. Louis County may be grouped together with the two St. Charles County locations.  Accordingly, we simply refer to St. Louis County and St. Charles County as two different locations as opposed to multiple locations.

Appellants Rifkin and Hutson filed suit in the Eastern District of Missouri on January 21, 1993 claiming McDonnell Douglas violated the WARN Act. On August 11, 1993, appellants filed their first amended complaint adding Gerald Blair as a plaintiff and requesting they be allowed to bring the suit as a class action on behalf of all McDonnell Douglas employees who were permanently laid off between October 16, 1992 and January 14, 1993. A motion for class certification filed October 13, 1993 was denied by the Honorable Charles Shaw on December 22, 1994.

McDonnell Douglas filed its Motion for Summary Judgment on January 7, 1995, arguing the WARN Act does not apply because there was no "mass layoff." Under the WARN Act, at least 500 employees must suffer an "employment loss" at a single site in order for there to be a "mass layoff."[3] First, McDonnell Douglas argued the St. Louis County and St. Charles County sites were not a "single site" as defined by the WARN Act and thus the number of laid off employees from these separate locations could not be aggregated for purposes of meeting the 500 employee requirement. Second, McDonnell Douglas argued that employees who were laid off and later rehired within six months did not suffer an employment loss as defined by the WARN Act because their layoffs were not in fact permanent. Finally, McDonnell Douglas argued the employees who opted for early retirement in lieu of layoff did not suffer an employment loss as defined by the WARN Act.[4] The District Court

---

[3]A "mass layoff" is also defined as a layoff of at least 33 percent of the employees, at a minimum of 50 employees (excluding part-time employees). 29 U.S.C. § 2101(a)(3). Appellant does not argue this, however.

[4]Appellants also challenge the District Court's denial of class certification in the underlying matter. This issue will not be addressed because, as a result of the court's present holding, the issue is moot.

granted McDonnell Douglas's Motion for Summary Judgment.  According to the court below, the St. Louis and St. Charles sites were not a

"single site", and those employees laid off and rehired within six months and those employees who opted for early retirement in lieu of layoff did not suffer an employment loss.  Accordingly, the 500 employee requisite number was not met.

Mr. Rifkin, et al., now appeal the District Court's decision in all respects.

## II.

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  We review a grant of summary judgment de novo, applying the same standard as the trial court.  We view the record in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255.  But if the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1987).  We also review a district court's interpretation of a statute de novo. Crane v. Sullivan, 993 F.2d 1335, 1336 (8th Cir. 1993).

The WARN Act requires that an employer give 60 days' notice to all affected workers before ordering a mass layoff.  29 U.S.C. § 2102(a)(3).  A mass layoff is defined as a reduction in force which:

> (B) results in an employment loss at the single site of employment during any 30-day period for-
>> (i)(I)at least 33 percent of the employees (excluding any part-time employees); and
>> (II)at least 50 employees (excluding any part-time employees); or
>> (ii)at least 500 employees (excluding any part time employees); . . . 29 U.S.C. § 2101(a)(3).

Appellant argues the WARN Act applies because, under §

2102(a)(3)(B)(ii), at least 500 employees suffered an employment loss at the single site composed of the metropolitan St. Louis area, including the St. Charles County sites. The issues to be determined on appeal all concern the aggregation of the number of employees who suffered an employment loss: (A) whether geographically separate sites, those located in St. Louis County and those in St. Charles County, compose a "single site", thus allowing the aggregation of the number of laid off employees at both locations; (B) whether employees at these locations who were laid off and then rehired within six months suffered an employment loss as defined by § 2101(a)(6); (C) whether employees at the St. Louis sites who chose early retirement in lieu of layoff suffered an employment loss as defined by § 2101(a)(6).

## A. Single Site

There is no statutory definition of "single site" of employment in the WARN Act but Deparment of Labor ("DOL") regulations and comments provide significant guidance in interpreting these provisions. The DOL Comments to the WARN Act state: "workers who suffer an employment loss at another single site of employment are not counted in determining whether plant closing or mass layoff coverage thresholds are met." DOL Comments, 54 Fed. Reg. 16,042, 16,047 (1989). The DOL defines "single site of employment" spatially by stating a "single site of employment can refer to either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1)(1995). As a general rule, geographically related facilities are single sites of employment whereas geographically separate facilities are separate sites. DOL Comments, 54 Fed. Reg. 16,042, 16,049-50 (1989).

Sites need not be contiguous in order to be considered a

"single site", but in order for non-contiguous sites to be deemed
a "single site", there must be some connection between the sites

beyond that of common ownership. In the situation of non-contiguous sites, the DOL states:

> (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers. 20 C.F.R. § 639.3(i)(4)(1995).

A DOL discussion paper further clarifies that "geographically separate buildings (i.e. several blocks or miles apart) would not appear to constitute a single site unless they were part of a single operation. An example of such an exception might be two warehouses several blocks apart sharing the same staff and equipment." 9A Ind.Empl.Rights Man. (BNA) 595:954 (1988); International Union, United Mine Workers v. Jim Walter Resources, Inc., 6 F.3d 722 (11th Cir. 1993).

The WARN Act's legislative history supports this definition. The House/Senate conferees removed "all references to 'place of employment' and replace[d] them with 'single site of employment.' This change is intended to clarify that geographically separate operations are not to be combined when determining whether the employment threshold for triggering the notice requirement is met." H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 1045 (1988), reprinted in 1988 U.S.C.C.A.N. 2078, 2079.

Other circuits interpret the regulations and legislative history similarly, holding that sharing of staff and equipment, and sharing the same operational purpose are appropriate criteria for determining whether two non-contiguous sites comprise a "single site" under the WARN Act. See Williams v. Phillips Petroleum Company, 23 F.3d 930 (5th Cir. 1994); International Union, United Mine Workers v. Jim Walter Resources, Inc., 6 F.3d 722 (11th Cir.

1993).

Appellant argues: (1) he has created a genuine issue of material fact as to whether the St. Louis and St. Charles sites share the same staff, equipment, and operational purpose; and, in the alternative, (2) the "truly unusual organizational situation" exception set forth at 20 C.F.R. § 639.3(a)(i)(8) applies in the case at hand.

## (1) Operational staff and purpose

Appellants argue their submissions create a genuine issue of material fact as to whether the St. Louis and St. Charles locations are a "single site". The evidence alleges that McDonnell Douglas operations are, in general, quite integrated. The evidence further alleges occasional transfer of employees and office equipment between the different sites, and central maintenance of personnel files. This evidence, even if true, does not establish the necessary connection between locations to constitute a "single site." There is no evidence that employees and equipment are regularly shared as opposed to occasionally transferred. Jim Walters, 6 F.3d at 726. Further, appellants alleged some similarities and connections amongst the products produced at the different sites. However, similarity of "operational purpose" means more than "produce the same product." It suggests, at least, the sharing of some management and personnel. Jim Walters, 6 F.3d at 727. Appellants' evidence does not establish a genuine issue of material fact regarding any of these "single site" criteria.

## (2) Truly Unusual Organizational Situation

Appellants also argue McDonnell Douglas's St. Louis and St. Charles locations fit within the "truly unusual organizational situation" exception to the "single site" rule. 20 C.F.R. §

-11-

639.3(a)(i)(8)(1995). Under this exception, two or more apparently separate sites may be deemed a "single site" if other criteria set

out by the DOL do not reasonably apply. The case which best defines this exception is Carpenters Dist. Council v. Dillard Dep't Stores, 15 F.3d 1275, 1290 (5th Cir. 1994), cert. denied, 115 S.Ct. 933 (1995). In Carpenter's Dist. Council, the court held that two separate locations were a "single site" when employees, housed together, were split off into a different building due to space considerations yet continued to perform the same functions. In the situation at hand, there is nothing unusual about the organization of the St. Louis and St. Charles County sites. Any connection between the two sites is nothing more than that present in most large corporate organizations.

The St. Louis and St. Charles sites are not a "single site" as defined by DOL regulations and they do not come under the "truly unusual organizational situation" exception. Accordingly, the number of employees who suffered an employment loss at these two separate locations may not be aggregated to reach the 500 employee threshold.

The Court's holding that the St. Louis and St. Charles sites are not a "single site" has the following effect. Of the 609 employees who allegedly suffered an employment loss, 47 worked at the St. Charles location, leaving the total potential number of employees suffering an employment loss at 562. Forty-nine (49) of the St. Louis employees were part-time employees, reducing the total to 513. Thirty-two (32) St. Louis employees were rehired within 6 months and 28 retired before layoff. If those employees who were rehired within six months did not suffer an employment loss, then the total potential number of employees suffering an employment loss is 481. In the alternative, if those employees who opted for early retirement in lieu of a layoff did not suffer an employment loss, the total potential number of employees suffering

an employment loss is 485.  Accordingly, if appellants' arguments
on either issue fail, this Court must affirm the lower court

because the 500 employee requirement is not met.

## B. Rehired employees

The layoff notice given to the affected employees stated they were being laid off as part of a reduction in force and that the layoff was "expected to be permanent." Thirty-two (32) of these employees were rehired within six months. The WARN Act defines "employment loss" as . . . "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6). Appellants argue that, because the layoffs were "expected to be permanent", these were employment terminations and the situation falls under § 2101(a)(6)(A). Thus, appellants argue, the subsequent rehiring was irrelevant.

A common sense reading of the statute indicates it is the actuality of a termination which controls and not the expectations of the employees. An employee cannot be defined as "terminated" if he or she is, in fact, rehired in the same position. Further, the fact that the layoff was merely "expected to be permanent" as opposed to a termination left open the possibility of a rehire and thus weighs against classifying this situation as an employment termination.

Although the DOL has never addressed this particular situation, its comments indicate it is actuality and not expectations or terminology which control whether or not an employment loss has occurred.

> A commentator questioned whether employees laid off for an indefinite period (i.e. where the employer expects to recall them but does not know whether their recall will occur before

or after 6 months) are automatically to be considered as experiencing an employment loss at the time of the layoff. In this situation, the layoff is not automatically deemed an

employment loss.  If the layoff lasted for more than six months, the workers would experience an employment loss, would be counted toward the trigger level for the plant closing or mass layoff of which their individual layoffs were a part, and would have been entitled to notice if the layoff or closing met coverage thresholds. DOL Comments, 54 Fed. Reg. 16,042, 16,049 (1989).

Finally, this conclusion is consonant with the purpose of the WARN Act, that is, "to ensure adequate opportunities (by way of notice of imminent employment loss) for retraining and/or reemployment." Moore v. Warehouse Club, Inc., 992 F.2d 27, 30 (3d Cir. 1993).  It is designed to give "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1 (1995); Martin v. AMR Services Corp., 877 F.Supp. 108, 113 (E.D.N.Y. 1995), aff'd, Gonzalez v. AMR Services, 68 F.3d 1529 (2d Cir. 1995). Employees in the situation at hand who were in fact rehired do not fall within the purpose of the WARN Act because there is no need for retraining or alternative jobs.  Accordingly, the number of employees rehired within six months do not count towards the requisite 500 employees who suffered an employment loss. Oil, Chemical, and Atomic Workers, Int'l Union, Local 7-515, AFL-CIO v. American Home Prods. Corp., 790 F.Supp. 1441 (N.D. Ind. 1992)(holding that employees whose positions were terminated but were later rehired within six months did not suffer an employment loss.); cf Martin v. AMR Servs. Corp., 877 F.Supp. 108 (E.D.N.Y. 1995), aff'd, Gonzalez v. AMR Services, 68 F.3d 1529 (2d Cir. 1995); Kildea v. Electro Wire Products , Inc., 775 F.Supp. 1014 (E.D.Mich. 1991).

## C. Retirees

Finally, appellants argue that those employees who opted for

early retirement in lieu of layoff suffered an "employment loss" under the WARN Act.  Once again, employment loss is defined in the WARN Act as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C. § 2101(a)(6)(A).  The plain wording of the statute indicates a retirement is not an "employment loss."  DOL Comments state:

> If . . . at the time the decision to give notice has to be made, the employer is not certain that its early retirement incentives will be accepted or how many workers will accept early retirement, the employer is best advised to give notice.  If the employer 'gambles' that a sufficient number of employees will accept the offer and 'loses', the employer's cost will be 60 day's pay and benefits . . . ." DOL Comments, 54 Fed. Reg. 16,042, 16,043 (1989).

By implication, the DOL's position is that early retirement in lieu of layoff is not an "employment loss" under the WARN Act.  This is consonant with the purpose of the WARN Act, providing time for retraining and reemployment, because those who choose early retirement are not in need of such warning.  Accordingly, we agree with the lower court that those employees who opted for early retirement in lieu of layoff did not suffer an "employment loss."

## III.

In summary, the work sites located in St. Louis County cannot be joined with those located in St. Charles County to compose a single site and thus the number of workers at the separate sites may not be aggregated for purposes of meeting the 500 employee requisite for a "mass layoff" under the WARN Act.  Further, those employees who were laid off and later recalled within 6 months and those employees who opted for early retirement in lieu of a layoff did not suffer an "employment loss" as defined by the WARN Act and, accordingly, do not count for purposes of meeting the 500 employee requisite for a "mass layoff."  Finally, the district court's

denial of class certification is moot as appellant's claims fail on the

merits.  Accordingly, for the reasons discussed above, we affirm the District Court's order granting summary judgment for McDonnell Douglas Corporation.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.